UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

_____

| | |
|---|---|
| Mashkikii-Boodawaaning (Medicine Fireplace) Inc., | Civil No. 23-cv-086 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| Chippewa Valley Agency, Ltd, d/b/a Chippewa Valley Bank, | JURY TRIAL DEMANDED |
| Defendant. | |

_____

Plaintiff Mashkikii-Boodawaaning Inc. ("Medicine Fireplace"),[1] by and through its undersigned attorneys, brings this action against Defendant Chippewa Valley Agency, Ltd, d/b/a Chippewa Valley Bank ("Chippewa Valley Bank") for racial and religious discrimination. Plaintiff herein alleges as follows:

## NATURE OF THIS ACTION

1. This case arises from Chippewa Valley Bank's discriminatory and unlawful denial of Medicine Fireplace's application to open a commercial checking account. Medicine Fireplace is a Native American organization that utilizes peyote in bona fide religious ceremonies, a practice which is legally sanctioned and protected under federal and state law. Yet, Chippewa Valley Bank cited this lawful and protected religious practice

---

[1] "Mashkikii-Boodawaaning" means "Medicine Fireplace" in the Ojibwe language, and signifies the spiritual healing that can occur from sacramental peyote use.

of Native Americans as the basis for denying Medicine Fireplace's account application. Chippewa Valley Bank's unwarranted and unjustified denial of service prevented Medicine Fireplace from accessing banking resources necessary to advance its religious mission.

2. Medicine Fireplace seeks damages and equitable relief based upon Chippewa Valley Bank's discriminatory denial of its account application.

3. This action also seeks injunctive relief requiring Chippewa Valley Bank to open a commercial checking account for Medicine Fireplace.

## PARTIES

4. Plaintiff Medicine Fireplace is a non-stock corporation and not-for-profit religious and charitable organization.

5. Medicine Fireplace's Board of Directors and membership are composed entirely of Native Americans.

6. Medicine Fireplace is incorporated as a non-stock, non-profit corporation in the State of Wisconsin with a principal office at 14505 Wayman Lane, Lac du Flambeau, Wisconsin, 54538.

7. Medicine Fireplace is an affiliated chapter in good standing of the Native American Church of North America ("NACNA"), one of the most longstanding and well-respected Native organizations in the country. As part of its religious and spiritual tradition, the NACNA and its chapters, such as Medicine Fireplace, administer spiritual rituals that involve the use of peyote.

8.   Defendant Chippewa Valley Bank is a bank with fifteen branch locations in northwestern Wisconsin, including a branch at 602 Peace Pipe Lane, Lac du Flambeau, Wisconsin, 54538.

9.   Chippewa Valley Agency, Ltd, the parent company of Chippewa Valley Bank, is incorporated in the State of Wisconsin with a principal place of business at 15755 County Highway B, Hayward, WI, 54843.

## JURISDICTION AND VENUE

10.   This Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 1331 because this case raises a federal question in Plaintiff's assertion of a claim under 42 U.S.C. § 1981. This Court has supplemental jurisdiction over the pendent state law claim pursuant to 28 U.S.C. § 1367.

11.   This Court has personal jurisdiction over Defendant because Defendant is incorporated in the State of Wisconsin.

12.   Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events giving rise to Plaintiff's claims against Defendant occurred in the Western District of Wisconsin and both Plaintiff and Defendant are domiciled in this district.

## FACTUAL BACKGROUND

**A.    Peyote sacrament is a core religious and cultural ceremony for North American tribes.**

13.   Peyote is derived from species of cactus native to the American Southwest and Mexico. Native Americans have used peyote in religious and spiritual ceremonies for

3

thousands of years. In the context of religious ceremonies, the psychoactive properties of peyote are not a drug, but rather are a form of spiritual and physical healing.

14. Especially as Native Americans were confined to reservations throughout the 1800s and 1900s, sacramental peyote use took on great cultural importance, providing rare opportunities for community-building and shared-identity across Native American tribes. At the same time, racial prejudice and animus against Native Americans and their religious practices led to efforts to suppress the sacramental use of peyote by Native Americans. Sometimes, even other Native Americans would attempt to suppress the sacramental use of peyote by Native Americans, due to attitudes and prejudices adopted from the colonizing society.

15. In an effort to gain greater legal protection, the Native American Church was incorporated in 1918 by members of multiple tribes, growing to include affiliated chapters across the continent. Native American Church chapters later formed larger umbrella organizations, including the NACNA.

16. The sacramental use of peyote has long subjected Native American Church members to discrimination—leading to enhanced legal protections for members. For instance, several Native American Church members challenged their denial of unemployment benefits by the state of Oregon in *Employment Division v. Smith*, 494 U.S. 872 (1990). After the Supreme Court held the denial of unemployment benefits to be lawful in that case, Congress swiftly used its plenary power to overturn that result and ensure that Native Americans are not subjected to racial or religious discrimination on the basis of their sacramental use of peyote.

17. Congress expressly recognized that "for many Indian people, the traditional ceremonial use of the peyote cactus as a religious sacrament has for centuries been integral to a way of life, and significant in perpetuating Indian tribes and cultures." 42 U.S.C. § 1996a(a)(1). Congress has also recognized that "since 1965, this ceremonial use of peyote by Indians has been protected by Federal regulation." § 1996a(a)(2).

18. Recognizing the sanctity and importance of peyote ceremonies to Native American spiritual traditions, Congress and federal regulators have protected sacramental peyote use under federal law. In particular, under the United States Department of Justice's ("DOJ") authority "to promulgate rules and regulations and to charge reasonable fees relating to the registration and control of the manufacture, distribution, and dispensing of controlled substances and to listed chemicals," 21 U.S.C. § 821, the DOJ has explicitly exempted "the nondrug use of peyote in bona fide religious ceremonies of the Native American Church" from the listing of peyote as a Schedule I controlled substance, 21 C.F.R. § 1307.31. *See also* 21 U.S.C. § 822(d) (granting DOJ the authority to waive "the requirement for registration of certain manufacturers, distributors, or dispensers if [the Attorney General] finds it consistent with the public health and safety"). Beyond that, 42 U.S.C. § 1996a(b)(1) protects Native Americans against discrimination based on their use of peyote in bona find religious ceremonies.

19. Wisconsin state law is in accord with federal law, and unequivocally exempts "the nondrug use of peyote and mescaline in the bona fide religious ceremonies of the Native American Church" from the state Uniform Controlled Substances Act. Wis. Stat. § 961.115.

5

### B. Medicine Fireplace was incorporated to preserve and nurture important religious and cultural ceremonies

20. In September 2020, Charles Carufel, a member of the Lac du Flambeau Band of Lake Superior Chippewa Indians ("Lac du Flambeau Tribe"), filed articles of incorporation for Medicine Fireplace.

21. Mr. Carufel, along with two other members of the Lac du Flambeau Tribe and a member of the Lac Courte Oreilles Band of Lake Superior Chippewa Indians, established Medicine Fireplace to provide a place of worship for tribal members and their descendants in order to protect and nurture tribal cultures, customs, ceremonies, and religious beliefs.

22. The membership of Medicine Fireplace is exclusively composed of Native Americans.

23. The articles of incorporation filed with the state of Wisconsin outlined the mission of Medicine Fireplace to "provide a safe and secure environment, for our children, youth, young adults, adults and elders; to worship, pray, utilize, ingest, all-natural medicines, to include peyote sacrament." The other all-natural medicines used by Medicine Fireplace include sage, cedar, tobacco, and maple syrup. Medicine Fireplace does not use, and does not condone the use of, marijuana, psilocybin mushrooms, ayahuasca, or other controlled substances.

24. Medicine Fireplace's peyote sacrament is used solely for religious purposes in bona fide ceremonies of the NACNA.

25.     As an affiliated chapter in good standing of the NACNA, Medicine Fireplace attends the annual NACNA convention to collaborate across tribes and NACNA chapters and preserve and uphold shared religious and ceremonial practices.

26.     In addition to its activities with NACNA, Medicine Fireplace engages in a variety of activities in the local community. These include cultural programming with the community college, hosting prayer meetings, and educating community members on traditional practices such as making maple syrup.

### C. Medicine Fireplace applied for a commercial checking account with Chippewa Valley Bank

27.     To advance its mission, better serve its membership, and safely store its organizational funds, Medicine Fireplace required a commercial checking account.

28.     Because Medicine Fireplace's principal office is in Lac du Flambeau, Chippewa Valley Bank is the bank with branch locations that can most conveniently serve the organization, such as by accepting deposits of cash raised at Medicine Fire fundraisers in or near the Lac du Flambeau Reservation.

29.     On or around March 30, 2022, Mr. Carufel applied for a commercial checking account in person at Chippewa Valley Bank's Lac du Flambeau branch location.

30.     Mr. Carufel submitted all of the paperwork necessary to open a commercial checking account, including the articles of incorporation, bylaws, state certificate of good standing, and applications from all four Medicine Fireplace board members. The corporate documents included repeated references to Medicine Fireplace's Native American membership, religious character, and sacramental peyote use.

7

31. Based on the guidance provided by Chippewa Valley Bank for opening a commercial account, Medicine Fireplace's account application was complete and fully complied with all of Chippewa Valley Bank's application requirements.

32. Barb Allen, the branch manager at Chippewa Valley Bank's Lac du Flambeau branch, accepted the paperwork from Mr. Carufel, telling him that he would be notified when the bank completed its application review.

### D. Chippewa Valley Bank denied Medicine Fireplace's account application based on the organization's peyote use

33. In early April 2022, Ms. Allen notified Mr. Carufel that Chippewa Valley Bank was unable to open an account for Medicine Fireplace. Ms. Allen cited Medicine Fireplace's peyote use as the reason for the denial, based on Chippewa Valley Bank's incorrect assertion that peyote use is illegal in all circumstances under Wisconsin state law or, alternatively, based on Chippewa Valley Bank's refusal to recognize the statutory exceptions authorizing peyote use in bona fide religious ceremonies of the NACNA.

34. Mr. Carufel asked to speak with Ms. Allen's supervisor in order to request reconsideration of the denial.

35. Shortly after the initial denial, Jessica Wiles, a supervisor in the Chippewa Valley Bank Bruce, Wisconsin branch, called Mr. Carufel. Ms. Wiles reiterated that the denial of Medicine Fireplace's application was due to the organization's peyote use. Mr. Carufel responded by clarifying the religious nature and purpose of Medicine Fireplace and noted that its peyote use was solely in the context of bona fide religious ceremonies of the NACNA. He cited the federal and state statutes making such usage legal for Native

American Church members. Ms. Wiles reiterated the denial of the application and again cited peyote as the reason, while altogether denying the religious significance of peyote use in prayer ceremonies as well as the state and federal protections for such ceremonies for Native Americans.

36.     Chippewa Valley Bank had no justifiable reason to ignore the religious significance and legally protected status of Medicine Fireplace's bona fide religious ceremonies—Mr. Carufel provided Chippewa Valley Bank with concrete, verifiable information regarding the religious nature of Medicine Fireplace's sacramental use of peyote, as well the legal authorities substantiating their legally protected status.

37.     Neither Ms. Allen nor Ms. Wiles cited any other reasons for the denial of the account other than the peyote use of Medicine Fireplace. There was no notice that any application materials were missing or that Medicine Fireplace's application was in any other way non-compliant with the bank's application requirements.

38.     Unsuccessful in its attempts to get Chippewa Valley Bank to reconsider, Medicine Fireplace sought legal assistance. On April 26, 2022, counsel for Medicine Fireplace sent a demand letter to Chippewa Valley Bank, raising the allegations of unlawful discrimination in the denial of the account application. Counsel for Medicine Fireplace also demanded that the bank open a commercial checking account for Medicine Fireplace, just as it would for any other non-profit corporation registered to do business in the State of Wisconsin.

39.     In that letter, counsel for Medicine Fireplace reiterated that the use of peyote in bona fide religious prayer services of the Native American Church was not illegal under

9

Wisconsin or federal law. To the contrary, such religious exercise is expressly authorized by the Wisconsin State Legislature and the United States Congress.

40. Chippewa Valley Bank's CEO, Mike Gerber, responded in a May 3, 2022 letter to deny the allegations of discrimination. According to Mr. Gerber, such discrimination was not possible because the bank generates income from other Native American customers and has Native American shareholders and board members. Mr. Gerber further claimed the denial of the account was actually due to "Chippewa Valley Bank's limited resources to assure proper control is being provided and proper handling of an account by a customer."

41. As a further pretextual justification for the bank's discrimination against Medicine Fireplace and its members, Mr. Gerber vaguely referenced "Federal and State Regulation [sic] requirements and financial risks of [Chippewa Valley Bank] including but not limited to ongoing responsibilities of a bank after an account is open . . ." Mr. Gerber did not cite to any state or federal statutes, regulations, or court opinions to corroborate any of the legal claims in his correspondence.

42. Furthermore, despite Medicine Fireplace's entreaties to Chippewa Valley Bank, Mr. Gerber neither acknowledged the well-documented religious and spiritual significance of peyote use prayer ceremonies for members of the Native American Church and its chapters, nor did he acknowledge the legally protected status of peyote use in bona fide religious ceremonies, such as those organized by Medicine Fireplace.

43. On June 28, 2022, counsel for Medicine Fireplace replied to Mr. Gerber's response letter to reiterate Medicine Fireplace's contention that the bank's decision to deny

Medicine Fireplace's application was primarily motivated by racial animus, and particularly so given the logical fallacy of Mr. Gerber's response claiming that the mere association with some Native Americans excuses any prejudice against others. Counsel for Medicine Fireplace also informed Mr. Gerber that, given the substance and tenor of his response letter, it is apparent that Chippewa Valley Bank's decision to deny Medicine Fireplace's account application is also motivated by religious prejudice, which violates Wisconsin law that prohibits discrimination based on creed. *See* Wis. Stat. § 106.52.

44. On July 12, 2022, counsel for Chippewa Valley Bank replied on behalf of Mr. Gerber. Counsel summarily denied any allegations of discrimination and repeated Mr. Gerber's unsupported assertions that the denial of the account application was based on "underwriting risks associated with maintaining a deposit account for Medicine Fireplace and the Bank's limited ability to provide proper oversight . . ." The letter also repeated the pretextual claim that the bank's denial could not be discriminatory because the bank serves other Native American customers. The letter suggested Medicine Fireplace apply to a different bank and concluded that the Chippewa Valley Bank "will not open an account for Medicine Fireplace as you demand."

45. On January 19, 2023, counsel for Medicine Fireplace sent another letter to Mr. Gerber. In addition to reasserting the racial and religious discrimination claims included in the previous letters, counsel for Medicine Fireplace informed Mr. Gerber of Chippewa Valley Bank's liability under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank Act"), 12 U.S.C. § 5536(a)(1)(B). The letter cited the Federal Deposit Insurance Corporation's ("FDIC") authority to enforce the Dodd-Frank Act, 12

U.S.C. § 1818(b), and cited federal regulatory guidance interpreting section 5536(a)(1)(B) to include even a single instance of the discriminatory refusal to open a deposit account. *See* CFPB, Unfair, Deceptive, or Abusive Acts or Practices (UDAAPs) Examination Manual V.3 at 10 (March 2022); FDIC Consumer Compliance Examination Manual VII-1.5–1.6 (June 2022). The letter provided a final opportunity to comply with federal and state law and open a checking account for Medicine Fireplace before Medicine Fireplace filed a lawsuit and reported Chippewa Valley Bank's discriminatory practices to the FDIC under the Dodd-Frank Act.

46. As of the date of the filing of this Complaint, Chippewa Valley Bank has continued to refuse to serve Medicine Fireplace as a customer, and has not opened a commercial checking account for Medicine Fireplace.

47. Upon information and belief, Chippewa Valley Bank has not denied similar account services to any other non-profit corporation based on the bank's "limited resources" to ensure compliance with an applicant's obligations as a non-profit corporation regulated by the IRS and Wisconsin Attorney General's Office, among other regulators.

48. Upon information and belief, Chippewa Valley Bank has not denied similar account services to any other religious organization based on the bank's "limited resources" to ensure compliance with an applicant's obligations as a non-profit religious organization, such as those restricting said organizations from engaging in political activities or devoting outsized efforts to lobbying state or federal policy makers.

49. Upon information and belief, despite the supposed "limited resources," Chippewa Valley Bank continues to open accounts for other similarly situated corporate and not-for-profit applicants.

## FIRST CAUSE OF ACTION
### (Race-Based Discrimination Under 42 U.S.C. § 1981)

50. Medicine Fireplace realleges and incorporates all previous paragraphs.

51. Medicine Fireplace was incorporated by and maintains a membership exclusively of Native Americans.

52. The Native American membership of Medicine Fireplace, its affiliation with the NACNA, and its bona fide religious use of peyote was apparent on multiple documents Medicine Fireplace provided to Chippewa Valley Bank when it applied for a commercial checking account.

53. Medicine Fireplace's application complied with all of Chippewa Valley Bank's requirements for opening a commercial checking account, but Chippewa Valley Bank denied Medicine Fireplace's application.

54. Chippewa Valley Bank cited Medicine Fireplace's peyote use as the reason for the denial, despite the fact that such use is fully legal and protected under federal and state law.

55. In a subsequent letter, Chippewa Valley Bank claimed Medicine Fireplace would burden the Bank's "limited resources," but did not cite any legitimate reasons for why Medicine Fireplace would pose such a burden.

56. On information and belief, Chippewa Valley Bank has opened commercial checking accounts for similarly situated not-for-profit organizations despite the Bank's supposed "limited resources." The only difference between these not-for-profit organizations and Medicine Fireplace is that Medicine Fireplace is a Native American organization dedicated to the practice of a Native American religion.

57. Native Americans are a protected class under federal and state civil rights laws, and discriminating against a Native American because of his or her ancestry is a form of race discrimination. *See Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Stop Treaty Abuse-Wisconsin, Inc.*, 991 F.2d 1249, 1257 (7th Cir. 1993) (recognizing racial animus against Native Americans as basis for liability under the Civil Rights Act); *Leonard v. Katsinas*, Case No. 05-cv-1069, 2007 U.S. Dist. LEXIS 27079, *24–25, 2007 WL 1106136 (C.D. Ill. Apr. 11, 2007) ("Native Americans are a well-recognized protected class, and their claims under the various anti-discrimination statutes have been treated as both race and national origin claims").

58. On information and belief, Chippewa Valley Bank's decision to deny Medicine Fireplace's commercial checking account application is motivated by racial animus against Native Americans.

59. Chippewa Valley Bank was aware that the Medicine Fireplace is affiliated with the NACNA, that it consists solely of Native Americans, and that it operates for the benefit of the spiritual and religious needs of Native Americans. In refusing to approve Medicine Fireplace's application, Chippewa Valley Bank provided no legitimate basis for its decision—even after Medicine Fireplace repeatedly provided Chippewa Valley Bank

with the information it needed to dispel its false notions about the legal requirements with respect to religious-use peyote for bona fire religious ceremonies.

60. Lacking any proper basis to deny the account application, and acting contrary to its own direct financial interests, Chippewa Valley Bank and its employees engaged in unlawful racial discrimination against Medicine Fireplace in violation of 42 U.S.C. § 1981.

## SECOND CAUSE OF ACTION
### (Religious Discrimination under Wis. Stat. § 106.52)

61. Medicine Fireplace realleges and incorporates all previous paragraphs.

62. Chippewa Valley Bank is a public place of accommodation for the purposes of Wisconsin Statute section 106.52, because it is a business providing financial and banking services, including commercial checking accounts, to the general public.

63. The religious purpose and mission of Medicine Fireplace, its affiliation with the NACNA, and its bona fide religious use of peyote was apparent on multiple documents Medicine Fireplace provided to Chippewa Valley Bank when it applied for a commercial checking account.

64. Chippewa Valley Bank cited Medicine Fireplace's peyote use as the reason for the denial despite the fact that such use is fully legal and protected under federal and state law.

65. In a subsequent letter, Chippewa Valley Bank claimed Medicine Fireplace would burden the Bank's "limited resources," but did not cite any legitimate reasons for why Medicine Fireplace would pose such a burden.

66. On information and belief, Chippewa Valley Bank has opened commercial checking accounts for similarly-situated not-for-profit organizations despite the bank's supposed "limited resources," thus displaying an improper preference for organizations that do not engage in bona fide religious peyote use.

67. Lacking any proper basis to deny the account application, and acting contrary to its own direct financial interests, Chippewa Valley Bank and its employees engaged in unlawful creed-based discrimination against Medicine Fireplace in violation of Wisconsin Statute section 106.52.

## **PRAYER FOR RELIEF**

WHEREFORE, Medicine Fireplace requests that the Court enter judgment granting it the following relief:

A. An injunction requiring Chippewa Valley Bank to open a commercial checking account for Medicine Fireplace;

B. An injunction requiring Chippewa Valley Bank to cease all forms of discrimination against Native Americans and organizations that serve Native Americans in Wisconsin or any other jurisdiction in which Chippewa Valley Bank currently operates or will operate in the future.

C. Statutory and nominal damages, including court costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 and Wis. Stat. § 106.52(4)(e)(1);

D. Such other and further relief as the Court deems just and proper.

Dated: February 6, 2023.	DORSEY & WHITNEY LLP

By: _s/ Jack Huerter_ .
Jack Huerter (WI #1098170)
huerter.jack@dorsey.com
Forrest Tahdooahnippah (MN #0391459)
(*pro hac vice* to be filed)
forrest@dorsey.com
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone: (612) 492-6653

*Attorneys for Medicine Fireplace*