IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MASHKIKII-BOODAWAANING
(Medicine Fireplace) INC.,

               Plaintiff,

v.

CHIPPEWA VALLEY AGENCY, LTD.,
d/b/a CHIPPEWA VALLEY BANK,

               Defendant.

OPINION AND ORDER

23-cv-86-wmc

---

In this civil rights action, plaintiff Mashkikii-Boodawaaning Inc. (also known as "Medicine Fireplace") asserts claims for race discrimination under 42 U.S.C. § 1981 and creed discrimination under Wis. Stat. § 106.52. Defendant Chippewa Valley Agency, Ltd. (d/b/a Chippewa Valley Bank) has moved to dismiss, which the court will deny as Medicine Fireplace has adequately alleged that the bank intentionally discriminated against it because of race and creed.[1]

FACTUAL ALLEGATIONS[2]

**A.  Background**

Plaintiff Medicine Fireplace is a non-stock corporation and a not-for-profit religious and charitable organization affiliated with the Native American Church of North America

---

[1] In its motion, defendant does not dispute (and the court assumes) that the plaintiff corporation can proceed under § 1981 and Wis. Stat. § 106.52. *See Amber Pyramid, Inc. v. Buffington Harbor Riverboats, L.L.C.*, 129 F. App'x 292, 294 (7th Cir. 2005) (plaintiff corporation "may itself maintain a suit under § 1981").

[2] The following facts are drawn from plaintiff's amended complaint. (Dkt. #11.) The court takes all factual allegations in the complaint as true and draws all reasonable inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 618 (7th Cir. 2007).

("NACNA"). Medicine Fireplace's Board of Directors and membership are exclusively Native American. Defendant Chippewa Valley Bank maintains branch banks in northwestern Wisconsin.

Medicine Fireplace conducts rituals using peyote as part of NACNA's religious and spiritual tradition. Sacramental peyote use allegedly became particularly important as Native Americans were confined to reservations in the 19th and 20th centuries. Later, Congress expressly legalized peyote for these purposes, stating "bona fide traditional ceremonial purposes in connection with the practice of a traditional Indian religion is lawful." (Am. Compl. (dkt. #11) ¶ 25 (quoting 42 U.S.C. § 1996a(b)(1)).) Congress further directed that "[n]o Indian shall be penalized or discriminated against on the basis of such use, possession or transportation [of peyote.]," recognizing that "for many Indian people, the traditional ceremonial use of the peyote cactus as a religious sacrament has for centuries been integral to a way of life, and significant in perpetuating Indian tribes and cultures." (*Id.* ¶¶ 24-25 (quoting 42 U.S.C. § 1996a(a)(1), (b)(1)).) The use of peyote for bona fide Native American religious ceremonies is also lawful under Wisconsin state law.

B.  Denial of Medicine Fireplace's Application for Bank Account

In March 2022, one of the founders of Medicine Fireplace, Charles Carufel, applied for a commercial checking account at Chippewa Valley Bank on behalf of Medicine Fireplace, submitting corporate documents that referenced Medicine Fireplace's Native American membership, religious character and sacramental peyote use. However, the bank's branch manager denied Medicine Fireplace's application, explaining that peyote was illegal under Wisconsin law. After the initial denial, Carufel spoke with a bank branch

supervisor, who reiterated that the denial was because of the organization's peyote use. Carufel then emphasized Medicine Fireplace's religious nature and its lawful use of peyote in bona fide, NACNA ceremonies. Nevertheless, the supervisor reiterated that the application was denied due to the organization's peyote use, while also denying the religious significance of peyote and its legality.

Medicine Fireplace later retained counsel, who sent a demand letter to Chippewa Valley Bank, alleging unlawful discrimination despite its use of peyote being lawful. In response, Chippewa Valley Bank's CEO asserted that discrimination was "not possible" because the bank had Native American customers, shareholders and board members, and maintained that the bank had actually denied the account because of the bank's "limited resources to assure proper control is being provided and proper handling of an account by a customer." (*Id.* ¶ 48.) The CEO also referenced unspecified, "Federal and State Regulation requirements and [the bank's] financial risks . . . including but not limited to ongoing responsibilities of a bank after an account is open." (*Id.* ¶ 49.) In doing so, the CEO did not directly address the religious and spiritual significance of peyote prayer ceremonies for NACNA members, or the legally protected status of peyote use in Native American religious ceremonies.

In June 2022, Medicine Fireplace replied to the CEO's letter, claiming that Chippewa Valley Bank's denial of its application amounted to racial and religious prejudice, prompting Chippewa Valley Bank to deny once again any discriminatory intent. Instead, it asserted that the denial was based on "underwriting risks associated with maintaining a deposit account for Medicine Fireplace and the Bank's limited ability to provide proper oversight." (*Id.* ¶ 52.)

OPINION

In filing suit, Medicine Fireplace claims that Chippewa Valley Bank denied it an account because of animus against Native Americans in violation of 42 U.S.C. § 1981 and the NACNA creed in violation of Wis. Stat. § 106.52.  Medicine Fireplace seeks injunctive relief requiring Chippewa Valley Bank to open a commercial checking account for it, as well as cease all forms of discrimination against Native Americans.  It also seeks statutory and nominal damages along with costs and attorneys' fees.  In turn, defendant seeks dismissal of plaintiff's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

A complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  The court applies this standard to plaintiff's federal and state claims below.

I.      Race Discrimination

Defendant argues that plaintiff has not alleged enough to maintain its claim of intentional discrimination against plaintiff solely because of its Native American identity in violation of § 1981.  Defendant further argues that denial of plaintiff's application because of its peyote use is a reason *unrelated* to race, as peyote use is not synonymous with Native American identity.  Plaintiff responds that it adequately alleged its race

4

discrimination claim under § 1981. As for its claim that defendant denied it a bank account for lawfully using peyote in particular, plaintiff argues that the "fit" between Native American race and sacramental peyote use is "identical," since the sacramental use of peyote is inextricably linked to Native American race.

Section 1981 prohibits discrimination in the making and enforcement of private contracts. *Sanghvi v. St. Catherine's Hospital, Inc.*, 258 F.3d 570, 573 (7th Cir. 2001). To establish a claim under § 1981, plaintiff must show that: (1) it is a racial minority; (2) defendant intended to discriminate on the basis of race; (3) the discrimination deprived it of one or more rights enumerated in § 1981, such as making a contract; and (4) but for race, plaintiff would not have suffered the loss of a legally protected right. *Black Agents & Brokers Agency, Inc. v. Near N. Ins. Brokerage, Inc.*, 409 F.3d 833, 837 (7th Cir. 2005); *Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 341 (2020) (to prevail under § 1981, "plaintiff must *initially plead* and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right" (emphasis added)).

In its complaint, plaintiff plausibly alleges that the defendant bank intentionally discriminated against it because of race and interfered with its ability to contract. Specifically, plaintiff alleges that defendant knew: Medicine Fireplace was affiliated with the NACNA; its membership was solely Native American; and it operated for the spiritual and religious needs of Native Americans. (Am. Compl. (dkt. #11) ¶ 69.) Further, plaintiff alleges that defendant denied its application on account of its peyote use, despite Carufel explaining the religious and lawful nature of its peyote use. (*Id.* ¶ 43.) Moreover, although the bank's account denial due to peyote use is facially race-neutral, plaintiff makes a persuasive argument that the allegedly close relationship between using sacramental peyote

and Native American identity -- recognized by Congress's acknowledgement of peyote's cultural significance to Native Americans and legalizing its sacramental use -- is enough for a reasonable trier of fact to infer intentional discrimination, assuming the facts support the allegation that peyote use was the driver for the bank's refusal to open an account in plaintiff's name. (*See id.* ¶¶ 24-25, 30, 32); *McWright v. Alexander*, 982 F.2d 222, 228 (7th Cir. 1992) ("an employer cannot be permitted to use a technically neutral classification as a proxy to evade the prohibition of intentional discrimination").

Thus, plaintiff has plausibly alleged that defendant discriminated against its right to open a checking account with defendant based on race. This is particularly true at the motion to dismiss stage, where plaintiff need only have alleged: who discriminated against it (Chippewa Valley Bank); what type of discrimination occurred (race discrimination); and when the discrimination took place (after plaintiff attempted to open a checking account in the spring of 2022). *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011) (stating pleading requirements for discrimination claim under the Fair Housing Act); *see Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) ("minimal pleading standard for simple claims of race [discrimination]").

Similarly, taking plaintiff's allegations as true and drawing all inferences in its favor, it plausibly alleges that, but for its Native American racial identity, defendant would have allowed it to open a commercial checking account. Specifically, plaintiff alleges that it had complied with defendant's application requirements; defendant had no legitimate basis to deny it an account; and defendant's decision to deny it a commercial checking account was "motivated by racial animus against Native Americans." (Am. Compl. (dkt. #11) ¶¶ 36, 39, 45, 68-69.) Certainly, these allegations "nudge" plaintiff's claim from conceivable to

6

plausible especially when defendant's allegedly peyote-based denial was itself plausibly race-based.  *Iqbal*, 556 U.S. 662, 680 (plaintiff must allege facts that "nudge" his discrimination claim from "conceivable to plausible" (quotation marks and alteration omitted)).  While defendant argues that plaintiff pleaded itself out of court by alleging that defendant cited reasons unrelated to race for denying plaintiff's account -- by first referring to plaintiff's peyote use and later to defendant's "limited resources to assure proper control," regulatory requirements and financial risk -- plaintiff also alleges that the defendant bank's stated reasons for denial were illegitimate and pretextual given:  its lawful use of peyote in religious ceremonies; defendant's failure to cite any specific laws or regulations to support those regulatory requirements; and defendant had not denied commercial bank accounts to any other corporate or not-for-profit entities because of supposedly limited resources.  (Am. Compl. (dkt. #11) ¶¶ 43, 48-49, 55, 69.)

Defendant's remaining arguments merit little discussion.  First, it argues that plaintiff did not allege a *prima facie* case under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or valid comparators.[3]  However, *McDonnell Douglas* states an evidentiary standard, *not* a pleading requirement, and plaintiff need not allege valid comparators at all to proceed past the motion to dismiss phase.  *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 510 (2002); *see also Brokers Agency, Inc.*, 409 F.3d at 837 (listing elements of § 1981 discrimination claim).  Indeed, the Seventh Circuit has now repeatedly held that the *McDonnell Douglass* framework may not even apply at summary judgment or trial, as that

---

[3] A plaintiff can establish a *prima facie* case under the *McDonnell Douglas* framework by showing: (1) it is a member of a protected class; (2) it attempted to make a contract; (3) defendant denied it the right to make the contract; and (4) another similarly situated entity who was not in the protected class was treated more favorably than plaintiff.  *See McKinney v. Off. of Sheriff of Whitley Cnty.*, 866 F.3d 803, 807 (7th Cir. 2017) (listing elements of *prima facie* employment discrimination).

framework is just one possible way for plaintiff to prove its case. *See Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018) (describing the *McDonnell Douglas* framework as an alternative way for plaintiff to meet his burden at summary judgment). Second, defendant argues that it could not have discriminated against plaintiff, as the bank had Native American customers, shareholders and board members, but that fact does not show that it did not discriminate against this plaintiff. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) ("it would be unwise to presume as a matter of law that human beings of one definable group will not discriminate against other members of their group" (quotation marks omitted)).

Accordingly, plaintiff has plausibly alleged its racial discrimination claim under § 1981.

## II. Wisconsin Creed Discrimination

Defendant also asserts that plaintiff's religious discrimination claim under Wisconsin law must be dismissed because it has not pleaded discriminatory intent. Plaintiff responds that it adequately alleged a religious discrimination claim based on the denial of a bank account because of its use of peyote, which is a fundamental attribute of its members' religious practices. The court agrees.

Wisconsin law prohibits denying "full and equal enjoyment of any public place of accommodation or amusement" because of, among other things, a person's creed. Wis. Stat. § 106.52(3)(a)1. Here, plaintiff has plausibly alleged that defendant denied it a commercial checking account because of its creed. Even assuming, as defendant asserts, that plaintiff was required to allege intentional discrimination, plaintiff plausibly pled that

8

defendant intentionally discriminated based on plaintiff's NACNA creed when, after Carufel explained that plaintiff lawfully used peyote in NACNA religious ceremonies, defendant *still* allegedly cited its peyote use as a reason for denying the request to open a commercial account and denied the religious significance of peyote use. (Am. Compl. (dkt. #11) ¶ 43.) Accordingly, plaintiff has adequately alleged a claim of creed discrimination under Wis. Stat. § 106.52(3)(a)1.

ORDER

IT IS ORDERED that:

1) Defendant's motion to dismiss (dkt. #13) is DENIED.

2) The court will reset the case schedule at the telephonic status conference already scheduled for April 30, 2024, at 1:30 p.m. (Dkt. #19.)

Entered this 16th day of April, 2024.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge